## Francis B. Nicoll

*v.*

## Charles H. Miller *et al.*

1. Real estate and personalty—*where lands assume these distinctive characters.* Where real estate is purchased by several, and procured to be conveyed to one of the number to be held by him in trust for all, for purposes of speculation and sale, upon such terms that the *cestuis que trust* have only a right to the proceeds thus arising, the right of the *cestuis que trust* is a personal right—the property is personal property.

But if the trustee thus holding the title, convey the property to others of the beneficiaries, by consent of all, simply as "trustees," without declaring any specific trust, the effect of such conveyance will be to create a naked trust, vesting the legal title in the grantees to hold simply for the use of the *cestuis que trust*, and subject to a demand by them at any time for a conveyance. The

. property thus becomes reconverted into its original character of real estate, creating in the *cestuis que trust* an equitable estate of inheritance.

2. DOWER—*to what character of estate it attaches.* The equitable estate of inheritance so created in the *cestuis que trust* becomes at once subject to the dower right of their wives.

3. SAME—*how such right may be divested.* The inchoate right of dower having once attached, it cannot be divested in any mode except that prescribed in the statute. No subsequent declaration of a specific trust by the *cestuis que trust*, can restore the property to its former condition of personal property so as to affect the right of dower, nor by relation, change the character of the conveyance by means of which the right originally attached.

4. TRUSTS—*effect of a failure of one of several trustees to act.* Where a conveyance is made to several, in trust, the failure of one of the co-trustees to act, will not defeat the conveyance.

5. SAME—*equity will preserve the trust.* In such a case, equity will entertain jurisdiction for the purpose of preserving the trust.

6. Mr. JUSTICE LAWRENCE dissents from the conclusion arrived at by a majority of the court in this case, holding that under the testimony of a witness, taken in connection with the conveyance from the original trustee and the subsequent declarations of a specific trust, all those instruments should be regarded as one, thus preserving the character of the trust as originally created, and the condition of the property as personalty.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This suit is founded upon the same transactions and written instruments as that of *Nicoll* v. *Ogden et al.*, 29 Ill., 323, and was brought by the appellant to recover dower in a lot which is a part of the property called in the former suit, "the trust half of the Hunter property," in which the appellant claims her husband, Edward A. Nicoll, had an equitable estate of inheritance.

That estate in her husband is claimed to have been created by the conveyance of the 1st of April, 1842, from Butler to Nicoll & Bushnell.

It was admitted in the answer and the stipulation made in the case of *Nicoll* v. *Ogden et al.*, that the conveyance of the 1st of April, and the two instruments of the 12th and 25th of the same month, declaratory of the character of the trust,

were executed and delivered at about the times of their respective dates, and not simultaneously, as parts of an entire transaction.

In this case, the making and due execution of these instruments is admitted in the answer and stipulation, but no admission is made respecting the date of the actual delivery of them.

In addition to the testimony upon which the former case was decided, the defendants in this suit have taken and read in evidence the deposition of Orsemus Bushnell, one of the trustees in the deed from Butler. And they insist that by his testimony the important feature of this case, differing from the former, is established; that the three instruments of the 1st, 12th and 25th of April, were all delivered and took effect together, as parts of an entire transaction, on or about the 25th day of April, 1842, the date of the paper which was made and executed last, and whether that fact is established, and the character of the property as personalty remained unchanged, is the principal question presented by the assignment of errors.

Mr. Bushnell's testimony referred to, is as follows:

*Question.* What is your name, age, and occupation and residence?

*Answer.* Orsamus Bushnell; I am sixty-two years of age, and a lawyer by profession; have been practising law since 1825; and residence, Westchester county, New York; place of business, New York City.

*Question.* Who of the parties to this suit do you know; and how long have you known them, respectively?

*Answer.* William B. Ogden, since 1826; Mahlon D. Ogden, since about 1835; Edwin H. Sheldon, since about the same time; Charles Butler, for forty years, at least; Eliza A. Butler, about twenty-five years. I do not know, and to my recollection, have never known any of the other parties.

*Question.* Look at the instrument now shown you, dated April 1st, 1842, made by Charles Butler, and Eliza A., his wife, to Edward A. Nicoll and Orsamus Bushnell, and which is referred to as "Exhibit number three," attached to the bill of complaint in this cause, and found on pages thirty-nine, forty, forty-one, of the printed record of this cause; also, look at the instrument dated April 12th, 1842, executed by Edward A. Nicoll and Orsamus Bushnell, entitled a declaration of trust, and which is found on pages three and four of the printed record of this cause, and there set out as a part of the bill of complaint; also, look at the instrument now shown you, dated April 25th, 1842, executed by John S. Bussing, Edward A. Nicoll, W. B. Ogden, B. F. Butler, Charles Butler, Chester Clark, Barton White, and which is referred to as "Exhibit number four," attached to the bill of complaint in this cause set out on pages forty-two, forty-three, forty-four, and forty-five, of the printed record in this cause, and state what facts are within your knowledge with regard to the time, manner, and place of the execution and delivery of said deeds or instruments?

*Answer.* On the 1st of April, 1842, the date of the first deed mentioned, I was residing in the city of New York, attorney and counsellor at law, and I believe the other parties to this deed, viz: Edward A. Nicoll, Charles Butler, and Eliza A., his wife, were also residing in said city. I recollect having been applied to about that time for my consent to become joint grantee with Edward A. Nicoll for the lands described in that deed, from said Butler and wife, on the terms then proposed to me, which was a trust; which trust, I think, is more fully set out in other papers. I remember, that in pursuance of that consent of mine, this deed was executed, I think, to me, but might have been to Mr. Nicoll; but came under my observation on or about the 9th day of April, in the last mentioned year. Upon the deed last spoken of coming into my possession, a declaration of trust was prepared and executed by Edward A. Nicoll and Orsamus Bushnell,

bearing date on the 12th day of April, in the last mentioned year, which is the paper, as I understand, secondly mentioned in the question. This last declaration of trust was delivered by Mr. Nicoll and myself to the parties interested in the trust. At that time, and, I think, all the time while I was talking to the parties about the subject of the trust, I expressed to them an unwillingness to act as trustee under the powers and express trust mentioned in the two former deeds or instruments, and exacted and was promised a paper more fully defining my powers as a trustee; and I think I required and drew myself the deed or instrument dated the 25th day of April, in the last mentioned year, which was duly executed and delivered to me; whereupon, and not before the execution of this last mentioned paper, although I had previously consented, provided this paper should be executed, I entered upon the trust, and conducted it to the best of my knowledge and ability, in connection with Mr. Nicoll, to such time as Mr. Nicoll absconded from New York, the date of which time I do not remember. After Mr. Nicoll left New York, proceedings were taken, as I understood and believe, by which an order was obtained through one of the courts of Illinois, authorizing me to close up that trust, irrespective of Mr. Nicoll. I proceeded to do so; and did so, as I understood it, many years ago.

*Question.* State whether you accepted the delivery of the deed of April 1st, 1842, referred to in the foregoing question and answer; and whether, or not, the instrument dated April 12th, 1842, referred to in the same question and answer, was, or not, delivered to the parties interested therein until after the preparation and execution of the instrument dated April 25th, 1842, referred to in said question and answer?

*Answer.* In general conversation with the parties interested, gave them to understand that I would accept those trusts, but I must have a paper more specifically defining my duties and trusts; and I am confident that I did not

accept either of those papers of the 1st or 12th, unconditionally, nor act under them until I got the paper of the 25th of April, 1842, above referred to.

*Question.* Who had, during the time these negotiations were pending, from the 1st to the 25th of April, 1842, the possession of the respective papers above referred to?

*Answer.* I have no doubt but that I had, mostly; Mr. Nicoll may have had them in his hands occasionally, but I was the custodian.

*Question.* Who requested you to act as trustee in this business?

*Answer.* To the best of my memory, several united in the request. If I were to name any parties, after this lapse of time, I should say Mr. Charles Butler, and perhaps Mr. William B. Ogden.

*Question.* When the deed of April 1st, made by Mr. Charles Butler, was delivered to yourself and Mr. Nicoll, was there any trust or power, or limitation proposed or discussed with reference to the lands, other than those recited in the declaration executed by yourself and Mr. Nicoll, and dated April 12th, 1842?

*Answer.* I have no doubt that all those papers were delivered to me at one time, as an effective delivery—what I mean, as a lawyer, as an effective delivery, I had not accepted them, nor accepted the trust, except as stated in my direct examination, until I got that paper of the 25th. All the trusts, and my reasons given for them at the time, were discussed up to the time and when I got the paper of the 25th.

*Question.* With whom were they discussed?

*Answer.* With Mr. Nicoll and Mr. Charles Butler; Mr. Edward A. Nicoll, I have no doubt.

*Question.* I gather from your statements, that you have no distinct recollection at this time, as to the individual gentlemen with whom you conversed on the subject of the trusts,

but that you infer, from the circumstances, that it was with the persons you have named and alluded to?

*Answer.* Your inference is wrong. I have a distinct recollection of talking with Mr. Butler and Mr. Nicoll about it. It was the subject of conversation, several times repeated; my reasons for it, given at the time, I distinctly remember, and refused to accept the trusts except upon those conditions, at the time.

*Question.* Were the three instruments alluded to severally executed on the day that they respectively bear date?

*Answer.* I do not know, and never did know.

*Question.* Did the declaration of April 12th, 1842, embody all the powers and duties of the trustees, as understood by the parties in interest?

*Answer.* That I do not know.

*Question.* Did you prescribe any condition to your acceptance of the trusts, further than those embodied in the paper dated April 12th, 1842?

*Answer.* I prescribed, or exacted, the paper of the 25th of April, 1842, which I think varies from that of the 12th of April, 1842; but I have not examined to see in what particulars exactly.

*Question.* State what, if any, conditions to your acceptance of the trust you insisted upon different from those expressed in the paper of April 12th, 1842?

*Answer.* I cannot now recollect what were the specific reasons given by me at the time, or what I insisted upon; I know I exacted and required that paper; the reason I gave at that time, I could not now repeat or remember distinctly.

*Question.* Is it, or not, your recollection or impression that the conditions you made to your acceptance of the trust were, that you should not have to go to Chicago to attend to the business in person, and that you should not be responsible for your co-trustee's acts or defaults?

*Answer.* I have no doubt but that I made those conditions at the time; my recollection is that I did.

*Question.* Do you recollect that you insisted upon anything except that these conditions should be assented to by the *cestuis que trust?*

*Answer.* I don't recollect insisting upon that assent of the *cestuis que trust,* yet I may have done it. I may have made that one of my points, yet I do not remember distinctly.

*Question.* Do you remember to have made any conditions to accepting the trust, except those named in my last question but one; if so, please name them?

*Answer.* I don't recollect what my specific reasons were at that time. I do recollect that I required that third paper of the 25th; and I generally remember, very distinctly, that I refused to act until I got it; but the exact specific reasons I then had for doing so, I cannot now put in words. I don't remember.

*Question.* Do you remember, that in-point of fact, you did insist upon any other conditions, or different conditions, to your acceptance of the trust than those named in my third previous interrogatory?

*Answer.* I do not specifically, unless the provisions or conditions vary from that contained in the paper of the 25th; as to which I am not at this moment prepared to speak.

*Question.* As a matter of memory, do you recollect, as conditional to your acceptance of the trust, you required any other terms, distinct from those named in fourth previous interrogatory?

*Answer.* As a matter of memory, I don't remember exacting, conditionally to my acceptance of the trust, any condition or provision not expressed in the paper of the 25th of April. If that is identical with those mentioned in the question, then I must answer the question in the negative. I do not remember.

*Question.* Who, to the best of your knowledge, proposed the original draft, and in whose handwriting is the paper of the 25th of April, 1842, which appears to have been executed by the parties thereto?

*Answer.* To the best of my knowledge, I prepared the draft, and the paper is in the handwriting of B. W. Kirkham, Esq., of New York; he was then, and had been for a long time previous, and is yet, a copyist for me.

*Question.* After recalling the transaction so far as you can, please state whether the papers, respectively dated April the 1st, 12th, and 25th of April, 1842, referred to in your preceding examination, were delivered by and to the parties entitled to make or accept delivery of them at different times, or simultaneously, as parts of one transaction; and if the latter, at what date was such delivery made?

*Answer.* I have no doubt that I saw the papers of the 1st, also the papers of the 12th—may have had them in my hand, and read them; I believe I did, and discussed them, before the 25th of April, and I have no doubt that they were not delivered, or accepted by me until the 25th; and I think and believe the transaction was closed on or about the 25th, and the papers exchanged as a part of one transaction.

*Question.* When you speak of delivery, or an effective delivery, of the papers, I understand you to refer, not to a manual delivery, but to an operation of the mind, which, as a lawyer, you deem essential to a legal delivery. Am I correct?

*Answer.* No sir.

*Question.* Will you explain, then, what you mean by an effective delivery?

*Answer.* I mean an exchange of the papers after the minds of the parties have met—a consummation of the transaction.

Upon the case as thus presented, the court below entered a decree dismissing the bill, from which the complainant took this appeal, and now assigns the same as error.

Messrs. ARRINGTON & PEABODY for the appellant.

The present case is substantially the same as that of *Nicoll* v. *Ogden*, reported in 29 Ill., p. 390. That case, after being elaborately argued, and a long advisement by this court, was decided in favor of Mrs. Nicoll. A powerful printed petition for a re-hearing was then presented by Judge Beckwith; to which two printed replies were offered in opposition, and after another protracted advisement, a re-hearing was denied. Hence, one might fairly suppose the question to be fully at rest. But unfortunately the fact has not accorded with the inference. For, subsequently to the mandate in the case of *Nicoll* v. *Ogden*, the deposition of Orsamus Bushnell, co-trustee of Edward A. Nicoll, was taken; and by stipulation was transferred into the present case, all the other facts in the two cases being the same. So that the only question now tendered for solution is: Can the deposition of Bushnell have the effect of changing or modifying the result attained by the decision in *Nicoll* v. *Ogden?*

We assume the negative, and in support of our position, adduce the following reasons:

1. Mr. Bushnell's deposition shows that the deed of April 1st, and the declaration of trust of April 12th, were *delivered* to him, (and were *retained* in his custody,) about the times of their respective dates.

2. The same deposition shows that Mr. Bushnell would not consent to act in the execution of the trust until he procured from the beneficiaries the paper of April 25th.

3. The entire deposition shows that the paper of April 25th was executed at the special instance of Mr. Bushnell, and for no other purpose than to induce him to go on with the performance of the trust.

These are the additional facts apparent on the face of the deposition, when stripped of the legal conclusions and illegal insinuations of the witness. And taking them as true, we

submit, that according to Mr. Bushnell's own statements, the deed of April 1st, and the declaration of trust of April 12th, were delivered at or about the times of their dates, and long before the paper of April 25th.

This is demonstrable from many well settled legal rules, a few of which we will now enumerate:

1. The deed of April 1st was delivered to the grantee in the trust. But a deed cannot be delivered to the grantee conditionally, or as an escrow. 4 Kent's Comm., 458; *Jackson* v. *Catlin,* 2 Johns., 32; *Neely* v. *Lewis,* 5 Gilm., 32.

2. The deed of April 1st was not for the benefit of Mr. Bushnell at all, but for that of the *cestuis que trust.* The delivery was for them, not for him. And a deed may be delivered to even a third person, (which in an equitable sense Mr. Bushnell was,) for the use of the grantee. *Church* v. *Gilman,* 15 Wend., 660; *Verplanck* v. *Stevry,* 12 Johns., 551, 552.

" Delivery, in the legal sense, consists in the transfer of the possession and dominion, and it is complete at the moment when the deed is in the hands or power of the grantee, with the consent of the grantor, and with his intent that it should operate and inure as a muniment of title to the grantee." Greenleaf's Cruise, Vol. IV, p. 29, note 2; See 1 Greenleaf's Ev. sec. 568a, note 7.

But here the deed was delivered by Butler unconditionally for the use of the beneficiaries, to Bushnell and Nicoll, the the latter being himself a beneficiary.

3. But suppose that Bushnell had been sole trustee, and had refused to act; that would not have defeated the trust. The Court of Chancery would have appointed a new trustee. Lewin on Trusts, 710; Hill on Trustees, 191; 2 Story's Eq. Jur. sec. 1061; *Wood* v. *Stone,* 8 Price, 613; Anon. 4 Sr. Eq. Rep., 700; *De Peyster* v. *Clendininig,* 8 Paige, 310.

Thus, in *Attorney Gen.* v. *Stevens,* 3 M. & K., 347, a new trustee was appointed where no person could be found answering the person described in the instrument of trust.

So we perceive that neither the assent nor the action of Mr. Bushnell was at all necessary to the validity of the deed.

We are, therefore, entitled to the full benefit of the opinion pronounced by this court in *Nicoll* v. *Ogden*, 29 Ill., 390; "that an equitable estate of inheritance was designed to be executed by the deed" of April 1st, " and continued under the declaration and specification of trusts, dated the 12th and 25th, there can be no dispute; both these papers, in express terms, declare that the trusts shall be performed to the heirs of the *cestuis que trust*.   This of itself is sufficient to show a design to re-convert the property into real estate. '

Messrs. SCAMMON, McCAGG & FULLER for the appellees.

In the case of *Nicoll* v. *Ogden*, 29 Ill., 323, it was admitted in the answer and the stipulation made, that the three instruments, the deed from Butler to Nicoll and Bushnell of April 1st, 1842, and the two declarations of trust of the 12th and 25th of the same month, were executed and delivered at about the times of their respective dates, and not simultaneously, as parts of an entire transaction.

In this case the making and due execution of these instruments is admitted in the answer and stipulation, but no admission is made respecting the date of the actual delivery of them.

The deposition of Orsamus Bushnell, one of the trustees, has been taken and put in evidence in this case, and it is insisted by the appellees, that it shows conclusively that those three instruments were all delivered and took effect together, as parts of an entire transaction, on or about the 25th day of April, 1842, the date of the paper which was made and executed last.

The great question in this case, growing out of the execution and delivery of those papers, considered in the light of Bushnell's testimony, is this: *did the parties by those instruments, re-convert their property, which, up to that time was personalty, into realty, so as to vest in the owners of it, equitable estates of inheritance, in which their widows are entitled to dower ?*

It has been seen from the previous history of this property, that prior and up to April 1st, 1842, it was personalty, though in form real estate, or land; and as personal property, was to be enjoyed by the owners during their lives, and as such, it would descend to their personal representatives at their decease, and their widows would not be entitled to dower in that, more than in any other personal estate.

As the conversion of money into land must be made by some decisive and unequivocal act of the owners, so the re-conversion must be equally unequivocal with the original conversion, and all the owners must join in the act of re-conversion. Adams Eq., 137, side Baker v. Copenbarger et al., 15 Ill., 103; 1 Leading Cases in Eq., 775 to p. 808 of the last edition in notes to Fletcher v. Ashburner, 1 Brown's Ch'y Reps., 497; 1 Story's Eq. Jur., sec. 790-1-2-3, and 1212 to 1214, Pratt v. Taliaferro, 3 Leigh, 419; Walter v. Ma, 19 Vesey, 429 top; Loughborough's Ex. v. Loughborough Devisee, 14 B. Monroe, 549; Craig v. Leslie, 3 Wheaton, 563; Beatty v. Byers, 18 Penn. St., 105; Griffith v. Rickets, 27 Eng. Ch. Reps., 298, and note on p 311.

We now proceed to consider the several instruments made in April, 1842, and see whether, by their express terms, or legal effect, a re-conversion of their property into land, was intended or effected by the owners who were parties to those instruments.

It is agreed on all hands, that the property retained its character of personalty until April 1st 1842.

Until that time Mr. Butler held the legal title to the "trust half of the Hunter property," as it was originally vested in him, but he then became embarrassed, and for the purpose (as it would seem) of placing the "trust" property beyond the effects of his embarrassments, he, with his wife, executed the deed to Nicoll and Bushnell, dated April 1st, 1842.

This deed was a proper instrument to transfer the title, then vested in Butler, to Nicoll and Bushnell. The property being land, the legal title could only be transferred by deed. But it is apparent that this deed was not made to Nicoll and

Bushnell for their own benefit, either jointly or separately, for two reasons: first, because it was made to them as trustees; and secondly, because they were to take and hold the property as joint tenants, and the whole was to go to the survivor, as in case of joint tenancy.

Nicoll cannot be supposed to have intended that his interest in the property should go to Bushnell and his heirs and assigns, as it would have done by the terms of the deed, had Bushnell survived him; nor did he, by anything that appears in that deed, intend to re-convert his interest into realty, nor could he do so, without the consent of the other owners.

The apparent and sufficient motive for making that deed was to take the title of the property from Butler, and thus secure it against any complication with his affairs, and place it in Nicoll and Bushnell, with the right of survivorship incident to other cases of joint tenancy; in which case the survivor would have a full and convenient power of disposition over the whole of the trust estate. But as yet, the two papers dated April 12th and 25th were not executed, and Bushnell swears that this deed of April 1st was not delivered until they were.

Another consideration, also, rebuts any presumption, that a re-conversion was intended to be made by that deed, which is this, that it was not for the trustee or trustees to re-convert the property; that could only be done by all the owners, and nothing that Nicoll did, or intended to do, could re-convert his own interest, even, until all the others joined him.

Nicoll had no greater or other interest in the property, under this deed, than he had before. It did not declare or ascertain his interest in it. He became, by its terms, a trustee with Bushnell, for the other owners and himself, but his own interest was the same while Mr. Butler held the legal title to the property that it was after the conveyance to Bushnell and himself, and if, before that, he had not an estate that would support his widow's claim for dower, he had not afterwards, for his own estate was of the same quality and had all the legal incidents as before.

Regarding this paper as held in abeyance until the execucution of the one dated April 12th, we next inquire, whether that had any effect upon the character of the property? This paper shows who were the owners of the property which was conveyed by Butler to Nicoll and Bushnell, as trustees, and what share or portion of it belonged to each owner. It further provided that, whenever partition should be made of the premises, the trustees should convey his share to each owner, but partition was only to be made of such portion of the property as should not have been sold by the trustees before the partition.  This left the power of sale in the trustees in full force, to be exercised at their discretion. They might sell all the land before partition, and divide the proceeds as money among the owners. Certainly, there was no re-conversion of that part of the property which the trustees might sell, and yet it seems clear that the property was all one thing or the other, either all personalty or all realty, all personalty until a partition had been made, and each owner's share conveyed to him in land, instead of the proceeds of the land when sold by the trustees.

But Bushnell swears that this paper did not satisfy him; that he wanted the owners of the property to declare and set forth the duties of the trustees more fully, and so the matter rested until the paper of April 25th was prepared.

This paper has some provisions in common with that of April 12th, in regard to a partition of the property, but it seems to have been especially designed to protect the trustees against liability for the acts of the agents whom they might employ to manage and sell the property.

The "objects and intents" of the trust vested in Nicoll and Bushnell are explicitly set forth in this instrument.  The trustees were excused from "doing anything to effect a partition;" but when one was made by the owners, the trustees were to execute the proper deeds to vest the titles in the parties entitled to them under that partition, but the power to sell all or any part of the property was still vested in the

26

trustees, or their agents or attorneys, and the parties agreed, each with the other and with the trustees, to accept the proceeds of the sales made by the trustees, as their respective shares of the property which might be sold.

The trustees might still sell all the property before partition, in which case the parties would take their shares in money or personalty before a partition was made.

The agreement was, in substance, this: that the trustees should still have the power to sell the property and divide the proceeds as before, but the owners would, if they could, within six months from April 1st, 1842, make a partition of all that which was not sold, and the trustees would then make the necessary conveyances to complete the partition.

We, therefore, submit that while the property was thus liable to be sold and the proceeds divided by the trustees among the owners, it retained the character of personalty, which the owners had originally stamped upon it, and that the several papers just above referrred to, and considered, were not intended to work a re-conversion of the property, because they do not show such decisive and unequivocal acts as are necessary for that purpose, according to Adams on Eq., 137, side, and as is said in *Craig* v. *Leslie*, 3 Wheaton, 563, " that it is the *election*, and not the *right* to make it, which changes the character of the estate, so as to make it real or personal, at the will of the party entitled to the beneficial interest." So here, the parties had a right to divide their property and take their shares in land, but they had not as yet done so; therefore it was not re-converted.

It must be kept in mind while considering this part of the case, that these papers are the only ones in evidence, which were made by or on behalf of all the owners of the property; that all of them must join in the " unequivocal" act which works a re-conversion; that the the trustees could not re-convert it, and so the deed of April 1st, 1842, does not prove anything on this point, and that the subsequent assignments by Nicoll of his interest in the property to Anderson & Oakley being his sole individual acts, could neither make nor

prove a re-conversion either of his portion or of that which belonged to the others.

We submit, in this connection, so much of the opinion of the court in the case of *Nicoll* v. *Ogden et al.*, as is found from page 379 to page 386, 29 Ill. Reps., where the late Chief Justice seems fully to sustain the views we have presented above, as to the legal effect of the papers made in April, 1842.

Most of the cases found in the books, involving the law of conversion and re-conversion of property, have grown out of the provisions of wills and marriage settlements; but the law is the same, where the questions arise upon deeds or contracts, as was stated by the court in 14 B. Monroe, 549, cited above, and where the difference between the law on this subject, as applied to wills and deeds, is stated to be this: that in case of wills the conversion takes place upon the death of the testator, " while the deed speaks from the date of its delivery." So that, if the instruments made in April, 1842, did not effect a re-conversion of the property at the time of their delivery, they never did, and some further act of all the owners was necessary to effect that object.

"If an estate is directed to be sold, and the proceeds divided among several persons, a re-conversion cannot be effected until all are willing and competent to join, for the duty imposed on the trustee is to convert the entire estate, for the benefit of all, and that duty continues until countermanded by all." Adams' Eq., 137, side and note; *Baker* v. *Copenbarger*, 15 Ill., 103; *Jennings* v. *Smith et al.*, 29 Ill., 116.

This property was, therefore, money for all, or land for all the owners, until all had agreed, by some unequivocal and decisive act, to change it from one to the other. *Willing* v. *Peters*, 7 Barr, 287, 290; *Wheldale* v. *Palridge*, 5 Vesey, 188 and notes.

But the touchstone of this matter is accurately stated by Adams, as follows: "A mere declaration that the property shall be converted," (or re-converted,) "is immaterial, for it is not the *declaration*, but the *duty* to convert, which works the equitable change," page 136 and note. And that must be

applied to this case as follows: under the original agreement of the owners, their land was to be considered money, because it was vested in the trustees, coupled with a *duty* to convert the land into money. Under the April instruments, the power to sell was continued; and when sales were made, it was their duty to divide the proceeds among the owners; but there was no duty imposed upon the trustees to divide the land among the owners, but only to convey it to them, when the latter had made partition of it; so we submit, that the trustees held the title to the property as personalty, and as such, the owners were entitled to it, until the latter had made a partition of it, and demanded conveyances from the trustees to consummate the titles under the partition.

See further to this point, Adams 156, where he says that no conversion (or re-conversion either) is effected, unless it is directed by an *imperative* trust, for, if the trustees may exercise a discretion in making a change, there is no duty imposed on them to do it, and no reason to deal with the property as if they had done so. See also, *Craig* v. *Leslie*, 3 Wheaton, 563; 2 Spence Eq. Jur., 254 to 260.

If, therefore, the property was not re-converted into land before Nicoll assigned all his interest to Anderson & Oakley, his widow cannot have dower assigned to her out of his interest in it prior to the assignment, more than in any other personal estate which he owned, and these considerations would seem sufficient to warrant the affirmance of the decree in the court below.

But there is another view of this case, which was fully argued by the counsel, when the case of *Nicoll* v. *Ogden et al.* was before the court, and we refer to their briefs, which are prefixed to the opinion of the court in that case, for all the law and arguments necessary on this point, and to the opinion of the court in that case, as found on pages 384-5-6, as decisive, in this court, at least, of the point, that by the instrument made in April, 1842, an executory, and not an executed trust was created in this property.

If the court shall be of the opinion that, by the April instruments, the parties intended to re-convert their personal property into land, which was its normal condition, then we submit, upon the authority of the case of *Nicoll* v. *Ogden et al.*, that the owners had not, under those instruments, any present vested legal or equitable estate of inheritance in the property.

They had rights in it, no doubt; but those rights were one or the other of these two, either to the proceeds of the sales which the trustees might make, or to restrain the power of sale which was vested in the trustees, make a partition of the unsold portion of their property, and then call upon the trustees to convey the property to the owners, in accordance with their partition.

Now, whether their rights in the property be called one thing or another, it is clear that they agreed to take their interest in it in money, until they should make a partition of it, and this is, in our opinion, the true construction of the papers made in April, 1842, considered in the light of the surrounding circumstances, under which they were made.

They vested the legal title to the company property in new trustees, with full power to sell it, and an imperative duty to divide the proceeds among the owners, until the latter should divide their property and call on the trustees to convey it to them in severalty.

The property should be regarded as personalty only, having none of the attributes of realty, until the owners had divided it among themselves as land, and called on the trustees for the conveyance of the legal title.

This view of the matter saves the case from all confusion or doubt as to the title, or kind of estate vested in the trustees, for the owners; for, in this light, they held it as personalty, until the owners had, by a partition and a demand of a conveyance, elected to take it as land.

But, whether the trustees held it as personalty for the owners, or held it in some other way, properly called an executory trust, or by some other name more or less open to

criticism, still the plain fact remains, that the owners had no absolute vested estate of inheritance in it, as in land, until they had divided it, and called on the trustees for a conveyance.

We submit the case upon the theory that no re-conversion of the property was intended or effected by the instruments made in April, 1842, and that it remained as personalty until long after Nicoll parted with his interest in it.

But, if the court shall be of opinion that an executory trust was created by those papers, then the opinion of this court in the case of *Nicoll* v. *Ogden et al.*, is decisive against the complainant's right to dower in her husband's share of the property.

We submit the following propositions as conclusively showing that the decree below should be affirmed:

1. It is agreed on all hands, that the property belonged to the owners as personalty and not as realty, until April, 1842.

2. That Bushnell's deposition shows that the papers made and dated April 1st, 12th and 25th, were delivered and took effect at one time.

3. That those papers are, therefore, to be regarded as one instrument, and read and construed together, and took effect upon the property and the interests of the owners from and after the date of their delivery, and if they did not operate as a re-conversion of the estate at that time, they never did. Authorities need not be cited to support this position.

4. That, under those instruments, as before, the property might all be sold by the trustees, and the proceeds divided in money among the owners, which excluded all incidents of realty from their respective interests.

5. That the owners had the right and the power under those instruments to divide their property, and stop the sale of it by the trustees, and when they had done so, and all concurred in calling on the trustees for a conveyance of their respective shares, it would be re-converted into realty, and

not before, unless by some equally decisive act, in which all the owners joined.

6.   That Nicoll parted with all his interest in the property before any partition was made, and while it was yet personalty, so that he had no estate in it, of the nature of realty; he had merely a right, in conjunction with the other owners, re-convert it, if he chose.

7.   That, if the court shall be of opinion that all the April instruments taken together, vested in the trustees and the owners of the property, an estate, which was an executory trust, or called more properly by some other name, still, whether considered in the plain, practical view of the transaction, or by the light of the closest legal technicalities drawn from and supported by all the cases bearing on the subject, it seems evident that neither Nicoll nor any of the other owners of the estate, had any interest in it *as realty*, until a partition was made, and conveyances were demanded of the trustees; until then, they had a right to do this, but as they might never do it, the court should not regard it as done.

8.   In either view of the case, Nicoll, at the time of his assignment of his interest in the property to Anderson & Oakly, was not seized of such an estate of inheritance in the property, *as land*, that would descend to his heirs, and in which his widow is entitled to dower, and the decree below should be affirmed.

Mr. Chief Justice Walker delivered the opinion of the court:

It is agreed that the facts in this case are the same as those appearing in the case *Nicoll* v. *Ogden*, 29 Ill., 323, except so far as they may be rendered different by the deposition of Bushnell, which has been taken since that case was decided. After carefully reviewing the grounds of that decision, we see no reason to change the views there expressed. We will now proceed to an examination of Bushnell's evidence for

the purpose of ascertaining whether it should lead us to a different result in this case. In that case we held that by the deed of April 1st, 1842, from Butler to Nicoll and Bushnell, to be held in trust for the beneficiaries, this real estate, and which had been previously regarded as personalty by the parties in interest, was changed from its artificial character of personal, to that of its ordinary condition of real estate, with all of its incidents. That by that conveyance Nicoll and Bushnell took the legal title in fee, simply as trustees, with no specific trusts declared, and that such a trust vested in the beneficiaries an equitable estate of inheritance for their several portions. That under this deed, the law implied the duty of the trustees to convey, on demand, to each *cestui que trust* his share, and that on a refusal a court of equity would have executed the trust by compelling a conveyance.

It was also held, that the beneficiaries were bound by that conveyance, and manifested their assent to it, as is shown by their deed of the 25th of April, which recites that the deed of the 1st of April was made by Butler to Nicoll and Bushnell at their request. It was also held that the *cestuis que trust*, by having that deed executed, manifested the intention to, and did thereby, change the entire fund into an equitable estate of inheritance in these lands. Nor could they by any subsequent declaration of trust, in any degree affect the rights of third persons, which may have attached after that conveyance was made, and before the specific trusts were declared. And under the law, married women became entitled to dower, in land of which the husband became seized of such an estate during coverture, and could not be deprived of that right except in the mode prescribed by the statute. And that Mrs. Nicoll thereby became vested with the inchoate right to dower in the premises, and that her right was not barred by the declaration of trusts by the deeds of the 12th and 25th of April.

We also held that the deed of the trustees of the date of the 12th of April, specifying the trust upon which they held the property, neither enlarged nor limited their powers

or duties. That they, after its execution, held the property precisely as they did under the deed of April 1st.

Bushnell, however, testifies that he was unwilling to accept the trust, and required the beneficiaries to make a declaration of such specific trusts as he was willing to undertake to execute. But he also says that the deed of the 1st and that of the 12th of April, were in his possession the greater portion of the time after they were executed until that of the 25th was made. This has very much the appearance of a delivery and acceptance of the deed. And we do not see how he could have had any objections to accept the trust under the deed of the 1st of April, as it could in no event impose any labor, expense or liability, except to convey when required to each of the beneficiaries. Under it, we can see no reason for the discussion in reference to the trust created by the deed of April 1st. Nor does he speak of any proposition ever having been made that Butler should make a further or different conveyance.

But when the question of sales came to be discussed, then we can readily see, that a person residing so far from the property of so large a value would be inclined to object to making sales in person. And when it is perfectly obvious that the care, attention and labor of the trust would be large, we can see that he would hesitate to undertake it in person. Hence the declaration of the trust of the 25th of April authorized them to perform the trust through attorneys in fact. And it is in reference to this deed that it would seem the discussion would most probably arise, and under which he would object to act, unless it contained some provision which would exonerate him from bestowing his personal attention to the execution of the trust.

He has failed to inform us why he and Nicoll executed the deed of the 12th of April, if they were unwilling to accept the simple trust created by the deed of the 1st. By it they assent to the trust, but are careful to assume no other or greater liabilities than the law imposes. This

deed was an unequivocal acceptance of the trust if it was delivered.

He, however, says that he refused to act under the deeds of the 1st and 12th, until that of the 25th was executed. Now he says that he was applied to about the 1st of April, to become a joint grantee with Nicoll, for the lands described in the deed from Butler and wife, on the terms then proposed, which was a trust. He also says that he thinks the trust is more fully set out in other papers. This latter declaration, it will be observed, is only an opinion, and he does not say that those terms or conditions were then spoken of, or had been agreed upon. And as he says that it was a matter of discussion, the probabilities are that all that was then agreed upon was, that the property was to be conveyed to them, to hold upon such trusts as might be declared by subsequent agreement. The present opinion of a witness in reference to a matter which had transpired more than twenty years previously must necessarily be indefinite and very indistinct. It must require a memory such as but few men are endowed with, which can, after such a lapse of time, refer to conversations and agreements with any degree of precision. And when the entire character of a written instrument is to be changed, and apparent rights of importance are to be cut off, by oral evidence of so ancient a transaction, we should at least act with hesitation, however honest, truthful and respectable the witness. That Mr. Bushnell has given his evidence as he understands and remembers it, with candor and frankness we do not doubt, but we must suppose that his recollection is imperfect. He in his deposition says it is, when interrogated as to other particulars of the transaction.

He says that an effective delivery was not made of the deeds until the 25th of April. As to the deeds of the 12th and 25th, it is natural to suppose that such was the fact; but he says the deed from Butler to himself and Nicoll had been in their possession from the time it was executed. He says that he means by a delivery, an exchange of the papers after the minds of the parties have met—a consummation of the

transaction. What papers would probably be exchanged? Clearly the deeds of the 12th and the 25th. The grantees already had possession of the deed of the 1st of April. And there is no intimation that it was delivered as an *escrow*, if such a delivery could be made to a grantee. Butler had executed it at the request of the *cestuis que trust*, and he must have intended it as a delivery when he placed it in the custody of the grantees, and the beneficiaries must have so regarded it when they had it executed.

We do not see that Nicoll, one of the grantees, ever objected to the trust imposed, or required any conditions before he entered upon the execution of the trust. And a failure of a co-trustee to act could not defeat the conveyance. In such a case, a court of equity would have entertained jurisdiction for the purpose of preserving the trust. Bushnell's refusal could not have defeated the conveyance and have frustrated the intention of the *cestuis que trust*.

Again, if it had been the intention of the parties when the deed of the 1st of April was executed to preserve the character of the property as personalty, by continuing it as a trading fund, it is strange that we find no recital of the fact either in the deed of the 12th or 25th. On the contrary we find in both of those deeds a declaration that partition shall be made, if practicable, within six months from that date. We could scarcely expect to find a stronger expression indicating an intention by the beneficiaries to hold it as real and not as personal estate. That declaration would seem almost conclusive, that it was the intention of the parties not to convert the character of the property from real estate which it had acquired by the deed of the 1st of April, again into personalty. It was also provided that the partition should be made amicably by the *cestuis que trust* or by law. Now, previous to the deed of the 1st of April, neither of the *cestuis que trust* could, by a bill in chancery, have compelled a partition, because, by their previous agreement, these lands were held alone for sale, and all that could have been done was to obtain a decree requiring the execution of the trust by a sale

of the lands. But under these deeds and declaration of trust the character of the property was entirely changed by the agreement of the parties, and either one of the *cestuis que trust* could, at any time after these instruments were made, have compelled a partition in equity.

The remainder of the real estate still belonged to them in equity, and upon their death it would have descended to their heirs, who could, in like manner, have compelled a partition.

The majority of the court are, for these reasons, of the opinion that the case of *Nicoll* v. *Ogden* is conclusive of this case, and that the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE LAWRENCE dissenting:

At the time when Butler executed to Nicoll and Bushnell the trust deed of April 1st, 1842, it is admitted that the property in question was was held as personalty. Butler could not change its character except with the consent of the *cestuis que trust.* The deed to Nicoll and Bushnell, as trustees, gave them the legal title, but did not reconvert the property into realty, unless that deed was made with the consent of the beneficial owners. In the instrument of April 25, 1842, they declare the trusts, and recite that the deed was executed at their request. In the case of *Nicoll* v. *Ogden*, 29 Ill., 389, the court held that the deed created a naked trust, vesting the legal title in the grantees to hold simply for the use of the *cestuis que trust*, and subject to a demand by them at any time for a conveyance, and thus creating in them an equitable estate of inheritance subject to dower. It was further held that the recital of consent on their part to this conveyance, in the instrument of April 25, 1842, is to be considered as evidence of consent to the making of the deed in the precise form in which it was drawn, that is, to the creation of a naked trust by which the title was merely to be held for the benefit of the *cestuis que trust*, and with no other duty than to

convey it in accordance with their directions. Since the hearing of that case, the deposition of the trustee, Bushnell, has been taken, and in my opinion it is shown by his evidence, viewed in connection with the character of the enterprise, from its inception, the reasons for the conveyance to Bushnell and Nicoll growing out of the pecuniary embarrassments of Butler, and the declaration of trusts embodied in the instruments of April 12th and 25th, that there was no intention on their part to change the character of the property, and that the recital of their consent to the deed is to be construed as a consent that Butler should convey the legal title to be held by the new trustees, subject to the trusts already existing, and to such as might be specified in connection with the change of title, and as a part of the same transaction. He testifies that the deed "first came under his observation about the 9th of April," and he, with his co-trustee, then executed the declaration of trust, bearing date the 12th of the same month. He does not say specifically whether this declaration was executed on the suggestion of the trustees or of the *cestuis que trust*, but he says it was all one transaction, and I can entertain no doubt that, as the deed left the trusts wholly undefined, the instrument of the 12th defining them was intended to be contemporaneous with the deed and, as between the parties and privies, is to be considered as a part of the deed. But the trustees, for their own protection, desired a still further specification of the trusts, and at their suggestion the *cestuis que trust* executed the instrument of the 25th of April, differing in no substantial particular, as to the character of the trusts, from the instrument of the 12th, but important to the trustees, because executed by the *cestuis que trust*, while the instrument of the 12th was executed only by the trustees. Bushnell swears that he refused to accept and act under the trust until this last instrument was executed, and that the three instruments were all one transaction.

I think, then, in brief, that the deed from Butler to Bushnell and Nicoll could not change the character of the

property from personalty back to realty without the consent of the beneficiaries; that their consent was given merely to the making of a deed, leaving the trusts undefined, with the exception that the existing trusts should remain in force unless modified by instruments to to be executed in connection with the deed, and as a part of it; that these instruments are to be regarded as a part of the deed, and that they leave the property stamped with the same character which it had before. The property having once acquired the character of personalty, it could only be reconverted into realty by acts on the part of the owners manifesting a clear intent to that end. Viewing these instruments in connection with the evidence of Bushnell, I can find in them no evidence of such intent taking immediate effect. The agreement that the property shall be divided, if practicable, within six months, I regard as an agreement that it *shall* be so converted into realty within that time by means of a partition, if practicable, but not as re-converting it, *eo instanti*. In my opinion, the decree of the court below should be affirmed.