## FRANCES B. NICOLL

### *v.*

## RICHARD MASON.

1. TRUSTS—*of estate conveyed in trust, whether realty or personalty.* Where, by an agreement between the parties to an undertaking, a portion were to furnish the capital, and the other parties, as agents in the joint undertaking, were to invest it in lots in the city of Chicago, to be bought and sold on speculation for their joint use and benefit, and those furnishing the capital were, at the expiration of the time to which the joint undertaking was limited, to have the capital, so furnished and invested, returned to them, together with a stipulated annual interest, which was first to be deducted from the proceeds of the undertaking, and the remainder to be equally divided among the parties so interested: *Held,* that the resulting estate, in the property so bought and sold, being an interest in the profits merely, was of the nature of personalty.

2. But if the lots so purchased are not sold, but, by consent of all the parties, are conveyed by the purchasing agents to one of the beneficiaries, in trust for all, by such conveyance the beneficiaries are invested with an equitable estate of inheritance, and the estate is thereby changed from its character as personalty to that of realty, and invested with all its incidents.

3. If, however, the purchasing agents, as the *cestuis que trust,* convey the land, by consent of all the beneficiaries, to one, in trust for all, expressly limiting the power of such trustee to a sale of the land and division of the profits, the character of the estate would not be changed by such conveyance, but would still remain as personal estate in the beneficiaries of the trust.

4. CHANCERY—*of reforming a deed, or declaring a trust.* A court of chancery will not, after a long lapse of years, interfere to reform a deed, or declare a trust, except upon the most positive and satisfactory evidence of the intention of the parties at the time the deed was executed or trust created.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. J. A. CRAIN and Mr. F. B. PEABODY, for the appellant.

Messrs. WILSON & MARTIN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that in the year 1835, Charles Butler, Edward A. Nicoll, William Bard and seven other persons, all residing in the city of New York, united with Kinzie & Pearson, of the city of Chicago, in a speculation in western lands and real estate.    It was agreed that the persons residing in New York should each advance the sum of $5,000, making an aggregate sum of $50,000, which Kinzie & Pearson were to invest in western lands, sell the same, and re-invest the proceeds in other real estate at their own discretion, having the entire control of the enterprise, but were to charge nothing for their expenses.    The arrangement was to cease on the 1st day of July, 1841, and no purchases were to be made after the 1st of July, 1839, and, if practicable, the lands were to be sold before the time limited for the termination of the arrangement expired.    The advances were to be refunded, with seven per cent. interest, and the profits to be divided equally, one-half to the New York parties and the other to Kinzie & Pearson, after deducting expenses, and if a loss occurred Kinzie & Pearson were to bear one-half of it.

On the 20th day of April, 1835, Kinzie & Pearson made a declaration of trust, with a schedule of property purchased by them, which was recorded in Cook county on the 11th of May, 1838.    Among this property was lot 1, block 79, in the School Section Addition to Chicago.    This is the lot in controversy, and was patented to Ebenezer and John Hale, and John conveyed his undivided half to Kinzie & Pearson.    The property purchased by them declined greatly in value and they became embarrassed, and one-half of the loss would have been sufficient to ruin them, had they been compelled to bear it.    But on the 1st of July, 1841, the contract was rescinded and canceled, and Kinzie & Pearson were released from paying their

share of the loss, and the property remaining unsold was conveyed by them to William Bard, in trust for the parties who had advanced the purchase money.

Ebenezer Hale conveyed his undivided half of the lot to James D. P. Ogden, who had an undivided interest in the other trust property. On the 6th of December, 1842, Bard, as trustee, made a partition with Ogden of the trust property, and Ogden conveyed his half of the lot to Bard, whereby it became a part of the trust property.

On the 23d day of December, 1842, Nicoll, one of the owners, assigned all of his property to Abel T. Anderson, as trustee for the New York Life Insurance and Trust Company, and he, on the 6th of February, 1843, transferred the trust to Bard. In the spring of 1843, this trust property was, by the consent of all parties, divided into ten shares, and one of the shares was allotted to each of the owners of the same; and on the 9th day of August, 1843, Bard conveyed nine of these shares to their respective owners, in partition, the deeds reciting that the conveyance of Kinzie & Pearson to Bard, although absolute on its face, was, in fact, made in trust, for the persons who were the owners. Bard had previously assigned his tenth part to John Bard and conveyed it to him.

On the 26th day of October, 1846, Bard, in execution of the trust in favor of the Insurance and Trust Company, conveyed the tenth, which had previously been held by Nicoll, to Wm. B. Ogden, and in 1849 he conveyed this lot to appellee. Nicoll having died, appellant filed her petition to recover dower in the premises, and on a hearing the court below dismissed her petition, and to reverse that decree she brings the case to this court by appeal.

It is not controverted, that the title to the property in controversy in this case is like that involved in the cases of *Nicoll* v. *Ogden*, 29 Ill. 323, and *Nicoll* v. *Miller*, 37 Ill. 387, and that unless the oral evidence which was introduced in this case explains the title so as to take it out of the rule announced

in those cases, they must govern this.    There can be no doubt
that the agreement under which this property was purchased
rendered it personal in its character.    It was purchased on
speculation, and for sale, and the capital advanced to be
refunded and the profits divided.    When it was purchased,
and while it was held by Kinzie & Pearson, it was not in the
contemplation of the parties that the land should be divided
and conveyed to them severally.    But the papers show that,
instead of the property being sold, it was, on the 26th of July,
1841, transferred to Bard to hold for the benefit of the parties
who advanced the money; that they then abandoned the
enterprise and released Kinzie & Pearson from their share of
the loss.

It is true that the deed to Bard was absolute on its face, but
it appears that it was understood that he held for the use of
those who advanced the money, and he subsequently recog-
nized their rights by a partition made by all of the parties,
and he conveyed to each his several share.    He then, at the
time he received the deed from Kinzie & Pearson, became
invested with a trust estate for the several owners, of whom
Nicoll was one.    And by that conveyance, what the parties
before regarded as, and intended to be, personalty, became
realty, and invested with all of its incidents, among which was
the inchoate right of dower in the wives of the several bene-
ficiaries, in the trust property.    When the partition was made
appellant had the right to elect to take dower in the portion
assigned to her husband.    That then became an inheritable
equitable estate, and this court has uniformly held that, under
our statute, dower attaches to lands held by the husband by
that character of title.    He was, then, in a position to force a
conveyance in fee, and even when the lands were conveyed to
Bard he could have filed a bill and compelled a partition, and
thus become invested with the fee, and the right of dower then
vested in appellant.    But it is claimed that the character of
the property, or the purposes for which it was held, was not in
46—49TH ILL.

fact changed by that transaction, and that this is proved by the evidence of several witnesses.

As would naturally be expected, after a third of a century from the commencement of the transaction, and a quarter of a century from its close, the witnesses testify in very general terms, giving their opinions and impressions. It would be remarkable indeed if it could be otherwise. Wm. B. Ogden frequently states, in his testimony, that he fails to remember facts, as the transaction had occurred· so long since. He supposes that it was not the design of the parties to make a partition at the time the property was conveyed to Bard, and that they intended to transfer to him the right to sell and convey as Kinzie & Pearson had done. But he evidently infers this from the form of the deed and other papers in the case. He does not say that he ever heard this from the parties, or from either of them. He does not pretend to give conversations or agreements between the parties, and his testimony in nowise affects the character of the transaction as disclosed by the deeds and other papers in the case.

It seems that Butler was the attorney of the parties, and held a tenth interest in the property. So far as the arrangement is disclosed by the papers, his evidence is clear as to dates, sums, persons, and terms and conditions of the agreement, but when he speaks of agreements not disclosed by documentary evidence, he seems to testify to inferences and conclusions. He nowhere speaks of any meeting or conference of the parties in reference to the transfer to Bard, or to anything that was said or agreed to by the parties in interest in reference to how Bard should hold the property—whether for sale or partition. And he says he has no recollection that Nicoll ever agreed that Bard should hold it for sale, and not to be divided. While the manner in which these witnesses testified inspires a belief that their evidence is fair and that they are conscientious, we at the same time feel that it is only based on inferences and conclusions drawn to a great extent

from the documentary evidence in the case, and from a general recollection of the transaction. It cannot be expected, after such a lapse of time, that any, even the most tenacious memory could recall the details of a transaction that may have taken several conferences of the parties to agree upon.

When such important powers are conferred, as to give a discretion to sell and convey such large quantities of property, upon an individual by the owners, it would be natural for them to confer and agree upon the person selected, the extent of power he should exercise, and the mode in which it should be performed. Trustees are usually selected on account of their fitness for the place, and in addition to fidelity, judgment, skill, and business qualifications are sought in making a choice; and it is not probable that the trustee would be selected to receive the property from Kinzie & Pearson without the parties agreeing upon the extent of the powers he should exercise. If such an agreement was entered into it is most probable that it was carried out when the division was made. It appears, from the evidence, that this property had fallen greatly in price, and was not salable, and that the original design of the enterprise could not be carried out, as the property could not be sold within the limited period. Nor could Butler, as attorney for the others, unless expressly authorized, transfer the power of sale to Bard that had been conferred upon Kinzie & Pearson. But a careful examination of all the evidence in this record fails to satisfy us that the documentary evidence does not speak the intention of the parties.

The very fact that deeds of conveyance and written instruments are required to evidence the title to lands, admonishes us that a court should at all times require satisfactory evidence of a mistake before a deed will be reformed, or a trust declared different from that deliberately entered into by the parties. When the transaction is remote, and when, from its ancient character, many circumstances attending the transaction

must have faded from the most tenacious memory, the court will require the most satisfactory and convincing proof. In such cases it should be clear, consistent, full, circumstantial and satisfactory. It would be hazardous in the extreme to overturn titles relied upon for a quarter of a century, on vague, loose testimony as to mere inferences. Such a practice would render titles to real estate insecure, and defeat, in a great degree, the object of the statute, which requires titles to real estate to be evidenced by writing. While we will not say that a deed could not be reformed or a trust declared after such a length of time, we will say that it should never be done except upon the most satisfactory and conclusive proof. A careful examination of this record fails to satisfy us that this case differs materially from *Nicoll* v. *Ogden*, and *Nicoll* v. *Miller*, and we must hold that those cases are conclusive of this. It then follows, that the court below erred in dismissing the petition.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*