(No. 24878.—)
DELLA W. TOPE *et al.* Appellees, *vs.* OLIVER E. TOPE *et al.*—
(MARY D. SCHUTT PETERS *et al.* Appellants.)

*Opinion filed December 19, 1938.*

RATHJE & CONNOR, (OLIVER B. OPSAHL, of counsel,) for appellants.

HEILE, CAVENDER, MILCHRIST & KAISER, and W. SCOTT HODGES, (HARVEY L. CAVENDER, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The plaintiffs (appellees here) in November, 1930, filed a bill for partition in the circuit court of Cook county, and because of various amendments of the bill and answers the case was not at issue until 1936. During the course of the proceedings the controversy centered upon the right of the plaintiffs to have a decree reforming the description of certain real estate conveyed by the ancestors of the plaintiffs. A clear understanding of the facts simplifies the decision of the matter involved. It is not necessary to recite, at length, the long and complicated descriptions contained in the record to bring before the court the issue involved.

In November, 1879, John W. Tope acquired title to approximately 250 acres of land in the south section of the Robinson reservation in Leyden township, Cook county, Illinois. This tract extended across the entire section east and west, the north line being 16 chains south of the north line of the section. The tract of land involved in this suit lies between the north line of the tract and the Old Plank Road, which also ran east and west across said section, which road was 20.18 chains south of the north boundary at the east end and 8.14 chains south of the north boundary at the west end. The Old Plank Road is now known as Irving Park boulevard.

On August 22, 1881, John W. Tope and his wife made and executed two deeds for property within the above described tract. The description in both deeds commenced at

the northwest corner of this tract, which is 16 chains south of the northwest corner of the section. By one deed he conveyed to William Kolze the west part of said tract, 43.14 chains in length, east and west, excepting therefrom 10.56 acres in the south part, not here involved. By the other deed he conveyed to Hiram A. Draper the east part of said tract, commencing at a point 43 chains and 14 links east of the northwest corner of the Tope land (a point identical with the northeast corner of the land conveyed to Kolze) thence south 16 chains and 70 links to the center of the Old Plank Road, thence easterly along the center of said road 33 chains and 36 links to east line of the section, thence north on said east line 20 chains and 18 links, thence west 32 chains and 54 links to the place of beginning.

It will be observed that the total distance across the section east and west by metes and bounds contained in the two descriptions amounts to 75 chains and 68 links, whereas the actual distance across the section was 80 chains and 55 links. If the east line of the section was considered the east boundary of the Draper tract, and only courses and distances or acreage used to ascertain the west line, it would lack 4.78 chains of meeting with the east line of the land conveyed to Kolze. This tract of land 4.78 chains wide from the north line of the Tope land to the Old Plank Road makes a tract of 7.88 acres.

The appellees contend that this tract of 7.88 acres was never intended to be sold by Tope, and Draper never intended to buy it. The prayer of appellees to have the deed reformed was granted by the lower court and a decree entered making the northwest corner of the Draper ground 47.92 chains east of the northwest corner of the grantor's land, instead of the distance recited in the deed.

Among the reasons urged for this reformation is the recital contained in each deed of the number of acres conveyed. The Kolze deed recited a conveyance of 44.77 acres. This was substantially correct. The deed to Hiram A.

Draper, for this particular tract, recited 60.98 acres, more or less, when, as a matter of fact, there would be, in the Draper tract, 68.86 acres, if the northwest corner of the tract was as specified in the deed. Taking a strip of ground 4.78 chains wide off of the west end of the Draper ground will leave approximately the acreage recited in the deed. There is no claim that John W. Tope, or any of his heirs, have ever been in possession of any part of this strip of ground since 1881, when the two deeds to Kolze and Draper were executed. There is some question as to whether Draper ever went into the actual physical possession of this strip, and this court held in *Draper* v. *Tope,* 348 Ill. 534, that there was no sufficient showing of possession to justify proof of possession in a Torrens proceeding. The evidence does show that the land in later years was farmed, but does not show from whom the tenant obtained possession.

It is conceded by appellees that the description contained in the deed to Hiram A. Draper, under the rules of construction applying to the controlling effect of monuments, courses and distances, and acreage in boundary disputes, conveyed to Hiram A. Draper all of the land between the north line of the tract and the Old Plank Road, east of the line 43.14 chains from the west boundary of the section. There can be no doubt, under the authorities, such is the correct rule, as monuments will be followed over courses and distances, and both the foregoing will be followed over quantity set forth in a description. (*Henderson* v. *Hatterman,* 146 Ill. 555; *City of Decatur* v. *Niedermeyer,* 168 id. 68; *Ogilvie* v. *Copeland,* 145 id. 98; *City of Mt. Carmel* v. *McClintock,* 155 id. 608.) The important question for decision, therefore, is to determine whether, in this case, there was sufficient evidence to reform the deed after the lapse of over fifty years. The question is raised in two ways. Part of the defendants answered, and part of them filed a demurrer to the bill, which was overruled, and they did not further answer.

The rule with respect to when and under what conditions a deed will be reformed has been before this court many times. To reform an instrument on the ground of mistake it must be a mistake with respect to the facts, must be mutual, and must exist at the time of the execution of the instrument in question. (*Matthews* v. *Whitethorn,* 220 Ill. 36; *Schweickhardt* v. *Chessem,* 329 id. 637.) In the *Matthews case* it is said the mutuality in mistake must relate to the time of the execution of the instrument, and show at that particular time the parties intended to say a certain thing and, by mistake, expressed another. This rule is supported by such a multitude of cases that it is not open to question.

The evidence required to reform a written instrument must leave no reasonable doubt as to the mutual intention of the parties. A preponderance of the evidence is not sufficient. The rule has been expressed in many ways. In all cases there should be satisfactory evidence before a deed will be reformed. (*Nicoll* v. *Mason,* 49 Ill. 358.) In *Goltra* v. *Sanasack,* 53 Ill. 456, the court says: "The mistake must be satisfactorily established, and not inferred from loose, doubtful or unsatisfactory evidence."

*Patterson* v. *Patterson,* 251 Ill. 153, holds the facts upon which reformation may be granted should be so convincing as to leave no reasonable doubt in the mind of the court. And in *Christ* v. *Rake,* 287 Ill. 619, it is said: "Where contracting parties have reduced their agreement to writing it is presumed to express their mutual intention, and that presumption does not yield to any claim of a different intention unless the evidence of a mutual mistake is of a strong and convincing character. A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never

granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty."

It is clear, from an examination of the authorities, that a mistake which may be remedied by reformation must be one of fact, and must be common and mutual to both parties to the instrument, and must exist at the time the instrument was prepared and executed, and not at a later time.

When we come to examine the facts in this case it is apparent the principal confusion grows out of the making of a plat by the county clerk for tax purposes, so the description of the land could be more conveniently entered upon the tax books by lot number rather than by long description. This survey was made in 1883 and apparently covered all of the land acquired by Tope as this clerk's subdivision covers the same 250 acres. The survey of the lands as made for this purpose assigns the east 32.54 chains of the property in question to the Drapers, and the remainder of the tract, with the exception of the 10.56 acres heretofore mentioned, to Kolze. The tract so designated as belonging to Draper, and numbered as "Lot One" contains approximately the acreage mentioned in the deed from Tope to Draper. The lot designated as belonging to Kolze is divided into two tracts of 34.14 acres and 10.63 acres, respectively, the amount of acreage designated in the Kolze deed, but, as a matter of fact, the plat assigns to Kolze, land 4.78 chains longer than contained in the deed to Kolze.

The manifest error of the clerk's plat is supported by the partition proceeding of the Kolze land brought by his heirs in 1907 in the superior court of Cook county, where it was determined that Kolze, by the deed in question, obtained a tract of land from Tope extending 43.14 chains from the west boundary line, and the survey of this partition plat shows almost the identical acreage as is designated in the deed from Tope to Kolze, and it would seem that if the clerk's plat had any evidentiary value it would support

a claim by Kolze for the disputed land, rather than Tope. However, such claim does not appear to have been made. The contention is made that the plat of the clerk's subdivision tends to show a mistake was made in describing the property conveyed to Draper because it designates Draper as owning a tract of land extending 32.54 chains from the east side of the section. There is no evidence in the record that anybody pointed out to the surveyor the west line of the Draper property, and there is nothing in the deeds justifying this assumption, so placing this plat of record can not be construed as an implied admission upon the part of either Draper or Kolze changing the effect of their respective deeds. But further than this, the plat of the county clerk's subdivision was inaccurate in many details, viz., (1) it shows 44.77 acres contained in a tract 47.92 chains long. The superior court partition proceeding shows there was 44.76 acres of land contained in a tract 43.14 chains long. (2) It shows the lands involved to have a total acreage of 106.70 acres, whereas it is agreed by every one that the true acreage was 113.51 acres. It is said that the distance from the northwest corner of the tract to the center of the Des Plaines river, which runs through the property, is 4.78 chains, but this distance seems to have been derived from the clerk's plat, which, as pointed out, is inaccurate. If it were true, however, it would have no significance, as no descriptions in any of the tracts have been based upon a point located in the center of the Des Plaines river.

One of the reasons given by the master in chancery and by the court for reforming the deed was that if the Draper land had a starting point 43.14 chains east of the corner of Tope's land it would make three other measurements in the Tope deed wrong, and would give more acreage to Draper than was mentioned in his deed, and would give Kolze less acreage than mentioned in his. The court was in error in the last part of the statement, as the superior court partition plat shows that Kolze had almost the iden-

tical number of acres mentioned in the deed with the given length of 43.14 chains, and, as above pointed out, the error in measurements is immaterial, since they must give way to the monuments referred to in the deed. The wrong rule was applied in determining what was intended to be conveyed by the instrument.

The established rule of construction in Illinois is that where a tract of land is conveyed by proper description the boundaries thus included will control as to the quantity of acres, and in case of deficiency the grantee will have no remedy, and in case of excess the grantor will have no remedy. The mention of the number of acres, in such case, has no legal effect. *Binder* v. *Hejhal,* 347 Ill. 11; *Atterbery* v. *Blair,* 244 id. 363; *Higinbotham* v. *Blair,* 308 id. 568.

No evidence was offered to any declarations by either Tope, Draper or Kolze immediately prior to or after the delivery of the deeds, and nothing appears from which a mistake could be inferred, except that there is a row of trees along the west line of "Lot One" of the clerk's subdivision, which it is claimed coincides with what Draper was intended to have, because it contains practically the requisite acreage. The inference is just as possible that the surveyor found the row of trees in that location and assumed that it was the west line of Draper's property. When many years have passed, and the parties to a transaction are dead, caution must be used in changing the deliberate language of their contracts. In *Nicoll* v. *Mason, supra,* with respect to a similar transaction, the court said: "When the transaction is remote, and when, from its ancient character, many circumstances attending the transaction must have faded from the most tenacious memory, the court will require the most satisfactory and convincing proof. In such cases it should be clear, consistent, full, circumstantial and satisfactory. It would be hazardous in the extreme to overturn titles relied upon for a quarter of a century, on vague, loose testimony as to mere inference. Such a prac-

tice would render titles to real estate insecure, and defeat, in a great degree, the object of the statute, which requires titles to real estate to be evidenced by writing."

The court is unable to find anything convincing in the record that a mutual mistake existed between the parties when their writings are viewed with due regard to the proper rules of construction. One witness testified that Draper cleared his land to the east of the row of trees about 1886, and that Kolze cleared the seven-acre tract in controversy, and that it had been farmed by a man by the name of Jacoby, but there is nothing in the record to show from whom the tenant obtained possession and under what authority Kolze was occupying a part of the land. Kolze was not claiming it, as is shown from the partition of his estate. Nothing appears in the record that the Draper heirs disclaimed title to it. The deeds to Draper and Kolze were made on the same day, and were signed and acknowledged the same day by the same grantor before the same notary, and it is not conceivable the grantor, on the same day, intended 43.14 chains to mean one thing for one grantee and another thing for another grantee.

It seems to the court that when two deeds are prepared at exactly the same time, and the ending place of one tract is made the beginning of another tract, no set of circumstances could be produced more surely manifesting an intention to dispose of a continuous tract to several owners, one beginning where the other ended. Under the proper rules of construction, we are unable to perceive where there is any evidence in the record justifying the decree entered by the circuit court.

There are a number of questions raised as to proper parties and the effect of a tax title obtained by appellants, but in view of the foregoing it is unnecessary to discuss the points so raised. The deeds introduced in evidence show conclusively the land conveyed to the parties interested, and the evidence upon which the lower court based its de-

cree could, at best, only be regarded as a probability, with the circumstances of the acreage, as pointed out above, having no weight whatever as against descriptions from fixed monuments. The great lapse of time renders ascertainment of any mutual intention, except as manifested by the deeds to the interested parties, impossible.

For the foregoing reasons the decree of the circuit court is reversed.

*Decree reversed.*