## MAUD S. LOGUE

### *vs.*

### THE GRAND TRUNK RAILWAY COMPANY.

Cumberland.    Opinion September 29, 1906.

*Negligence.   Evidence.   Burden of Proof.   Uncontradicted testimony not binding, when.*

1.  When it is proved that a mechanical appliance had at one time been broken and thereby had become dangerous, the burden of evidence is upon the party alleging that the danger was afterward removed.

2.  In such case the testimony of one witness that he had done what would have removed the danger is not binding on the jury, though uncontradicted by any other witness, when circumstances tend to show that in fact the danger was not removed.

On motion by defendant.    Overruled.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant in allowing its semaphore wire across a public street to sag down into the street thereby causing the horse which was drawing the carriage in which the plaintiff was riding, to stumble and fall down, in consequence of which the plaintiff was thrown into the street and injured.

Tried at the October term, 1905, of the Supreme Judicial Court, Cumberland County.    Plea, the general issue.    Verdict for plaintiff for $3000.  ⸱ The defendant then filed a general motion for a new trial.

The material facts appear in the opinion.

*Foster & Foster and J. M. Libby,* for plaintiff.

*C. A. & L. L. Hight,* for defendant.    .

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

EMERY, J.   At the Grand Trunk Railway station at Mechanic Falls, the semaphore wire rope, composed of five or six strands and nearly half an inch in diameter, passed, when in order, high over a public street out of the way of travelers.   This wire rope had parted near one end, so that across the street, unless held up, it would sag down in the way of travelers.   The break was not repaired for several days.   In the meantime on one occasion the rope was down across the street, and the plaintiff traveling along the street was injured thereby without any fault on her part.   So far the liability of the railroad company is clear.

It was in evidence, however, that immediately after the rope was broken some measures were taken by the company's servants to so fasten it up that where it crossed the street it should not sag down in the way of travelers.   A signalman in the company's employ testified that he drew the rope taut, up out of the way of travelers, and then tied the end around a post with two or three half hitches which held the rope in place.   Immediately after the accident he went to this post and found the rope unfastened, or, to use his own words, "the half hitch was taken out."   The station agent testified that at the time of the breaking of the rope he went to see if the signalman had effectually fastened it up and found it had been "securely" tied around the post, but he did not describe how it had been tied. This testimony was uncontradicted by any oral evidence, and the rope had been thus held up for a time.   The defendant company contends that this testimony being uncontradicted must be taken as true; that it shows that the company had exercised due care; and that until the plaintiff traces the undoing of the tie around the post to some agency of the company (which it is contended she has not done) she has not overcome the defense thus set up.

On the other hand, the plaintiff adduces various circumstances shown in evidence as sufficient to overcome the testimony of the signalman and station agent, and as sufficient to authorize the jury to find in fact that the rope had not been properly fastened up.   The

signalman had but one hand; the wire rope was very stiff, so stiff that a piece one foot long could hardly be bent at all by the two hands; there was a heavy strain on the rope during the process of tying and afterward, a strain liable to be increased at times by various causes; the rope did come down. The testimony of the signalman was really uncorroborated. The station agent did not corroborate him as to the mode of fastening, but simply gave an opinion that the fastening was secure, an opinion on the very question for the jury. Again, the fact that the wire was broken having been established and its dangerous condition as to travelers being manifest, the burden of evidence, at least, was upon the company to show that afterward and before the injury the rope had been in fact securely fastened up.

The case turns upon the question whether the broken rope was in fact so securely fastened up that its possible falling down across the street was not to be apprehended by ordinarily careful men bound to know the full situation and the danger. It is not enough that the company's servants believed the fastening to be sufficiently secure to prevent the falling of the rope. The question is one of fact, not of belief. How the rope was fastened up and whether that fastening was a compliance with the duty of the company were questions for the jury. The issue before us is therefore narrowed down to this: Was the jury bound by the testimony of the signalman to find that the rope was in fact fastened up as he stated, and that such fastening was such as should have been made under all the circumstances? We think not. It is not an unreasonable inference from all the evidence that the fastening the signalman in fact did make was not sufficient to hold the rope up in place.

*Motion overruled.*