URSULA S. YEAGER, Administratrix to the Estate of JOSEPH A. YEAGER, Deceased, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Evidence:** CONCLUSION. Not every inquiry calling for a fact in the nature of a conclusion is incompetent. Thus in an action for the death of a switchman the testimony of a competent witness that it is the duty of an engineer in moving his engine to keep a lookout ahead for cars with which he may collide is proper.

**Railroads:** ACTION FOR DEATH OF SWITCHMAN: CONTRIBUTORY NEGLIGENCE: EVIDENCE. In this action for the death of a switchman while riding the footboard of the engine which was pushing a car, the question of whether decedent was negligent in not being

on the car ahead of the engine and keeping a lookout instead of on the footboard of the engine was, under the evidence, for the jury.

**Same:** SUBMISSION OF ISSUES. Where, as in this action for the death of a switchman, it was not shown to be the duty of the yard master to direct the switching crew which track to take in transferring the car, but simply to tell them where to place the car and for them to determine the route, the issues of negligence based upon the omission of the yardmaster to give such instruction and the engineer's act in transferring the car without such direction should not have been submitted to the jury.

**Same:** NEGLIGENCE. While it was the duty of the switching crew to know upon which track they were moving the engine and car in question they were not necessarily negligent in using the track selected unless it was unsafe.

**Same:** NEGLIGENCE: EVIDENCE. In this action the question of whether the switching crew were negligent in failing to observe that they were upon a switch rather than the main track is held under the evidence to have been for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION. An employee may ordinarily rely upon a discharge of their duty by other employees; and in this action the instruction of the court when construed with reference to the evidence is held unobjectionable, as relieving decedent from the performance of his duty and entitling him to rely wholly upon a performance of the duties of his coemployees to keep a lookout for his safety.

**Same.** Where there was evidence, as in this case, that decedent's proper place was on the footboard of the engine, an instruction that he was bound to use ordinary care to place himself in a position where he might properly perform his work, which included a lookout for obstructions and signaling the engineer, he was negligent if he failed to do so, was proper in view of the evidence.

**Evidence:** CREDIBILITY OF WITNESS: INSTRUCTION. Although a common test of the credibility of evidence is whether the same can be reconciled with the testimony of other witnesses, still, the court should not by instruction require the jury to reconcile the other evidence with impeached testimony in order to sustain it, if in doing so it is necessary to construe the credible testimony contrary to what the jury believes to be true.

**Negligence:** SUBMISSION OF ISSUE. It is reversible error to submit issues of negligence which have no support in the evidence.

*Appeal from Emmet District Court.*—HON. D. F. COYLE,
Judge.

SATURDAY, DECEMBER 18, 1909.

ACTION for damages resulted in a judgment for the
plaintiff.   The defendant appeals.—*Reversed.*

*Carroll Wright, J. L. Parrish,* and *Crim & Morse,*
for appellant.

*J. G. Myerly* and *M. J. Groves,* for appellee.

LADD, J.—The defendant's railroad extends in a north-
westerly and southeasterly direction through Estherville,
but is referred to by witnesses as running east and west.
South of the main track are several side tracks numbered
from one up from the main track.   North of the latter is
an elevator track.   The Minneapolis & St. Louis Railroad
crosses the main track east of the switchyard and is con-
nected with it by a transfer track.   In the evening of
February 6, 1907, the deceased, Joseph A. Yeager, was
engaged in switching cars as fieldman, while one Brisbin
was following the engine which was manned by an engineer
and fireman.   The yard master, with this crew, had moved
some loaded cars from the transfer track to side track No. 1,
and, after leaving them near the east end of the said side
track, returned to the depot at the west end of the yard; the
engine being backed.   Here the yard master directed the
crew to get a coal car from the elevator track and take it
to the transfer track and then return to side track No. 3,
where he would meet them.   For this purpose the engine
backed down the main track, and was switched to the
elevator track, where the coal car was coupled in front.
The engine then was backed on the main track, pulling the
coal car, and then moved forward pushing the coal car

through a switch, which had been left open, onto side track
No. 1. The engine had no pilot, but was provided with a
footboard at each end and also with grab irons. Both
Brisbin and deceased appear to have ridden on these foot-
boards during the progress of the engine. When moving
forward on side track No. 1, Brisbin stood on the north
end of the front footboard, and the deceased on the south
end, and so continued as the engine moved to the east at
a speed of from six to eight miles an hour. As it passed
the switch, Brisbin directed the engineer to take the car
to the transfer track, and, as some of the evidence tended
to show, gave him a signal that he was to take it the
entire distance and that the track was clear. The cars left
on side track No. 1, were about one-half mile from the
switch, and, as the engine approached, Brisbin signaled the
engineer to slow up, but received no response, and within
a few seconds the coal car collided with the first standing
car and caused the death of Yeager.

I. Brisbin, and also the fireman after showing his
competency, was asked what was the duty of an engineer
when moving his engine as to keeping a lookout ahead,
1. EVIDENCE: and, over objection, answered that he was
conclusion. supposed to keep a lookout continually.
Appellant assumes that this was an inquiry as to the duty
of the engineer in the circumstances disclosed, and therefore
called for a conclusion the jury alone could draw; but this
is not so, save inferentially. The inquiry was of those
qualified to speak as to what was the duty of an engineer
in moving his engine, not this particular engineer, but
anyone, and though calling for a fact in the nature of a
conclusion, the evidence was admissible. *Quinlan v.
Railway,* 113 Iowa, 89. The object of such testimony
is to fix a criterion by which to measure the acts of
the engineer whose conduct is under investigation. The
jury might infer therefrom that it was the particular
engineer's duty to keep a lookout continuously; but this

does not render the testimony obnoxious to the objection interposed.

II.   Appellant contends that deceased was guilty of contributory negligence in that, as is said, instead of riding on the footboard of the engine, he should have been at the front end of the coal car keeping a lookout for obstructions on the track ahead. If, in the performance of his work, deceased owed this duty to defendant, the point would have to be conceded.   As to that, however, the evidence was in conflict.   The defendant's rule provided that: "When cars are pushed by an engine (except when shifting and making up trains in yards) a flagman must take a conspicuous position on the front of the leading car and signal the engineman in case of need." Apparently the reason for the exception is that the engineer may have in mind the location of or be able to keep a lookout for obstructions on the track and enable the helpers to be where they can alight on the ground conveniently to throw switches or couple and uncouple cars and the like. Two witnesses called by plaintiff testified that deceased was in the proper and customary place; one of them explaining that it was only when two or more cars were being pushed that the fieldman was required to keep a lookout from the front car.   Brisbin testified both ways, and several witnesses called by defendant were of opinion that deceased should have been on the coal car keeping a lookout.   Manifestly the issue as to whether he should have been on the coal car or was where he should have been was for the jury.   Possibly, owing to the height of the end boards on the coal car, he could not have seen ahead, without leaning out or getting off; but if at a place where, in the exercise of reasonable care, he might have been, he was not guilty of negligence.   The evidence with reference to the customary place for the fieldman to ride when a car was being pushed was not introduced for the purpose of excusing

2. RAILROADS: action for death of switchman: contributory negligence. evidence.

negligence, but as tending to show that deceased, in the manner of performing his work, was in the exercise of ordinary care.  *Pierson v. Railway,* 127 Iowa, 13.   See *Boyce v. Wilbur Lumber Co.,* 119 Wis. 642 (97 N. W. 563).

III.   Eight grounds of negligence are alleged:   (1) Defective condition of the engine because of which steam valves leaked, thereby obscuring the view of members of the crew in observing signals and obstructions; (2) the omission of Bradley in directing the transfer of the coal car to instruct the crew what route should be taken; (3) the failure of Brisbin to take the main track and to observe that the engine and car were on the side track and the giving of the signal that the side track was clear; (4) the movement of the engine at a dangerous rate of speed at the time of the collision, the failure of the engineer to ascertain the location of the standing cars in time to avoid the accident, and failure of the engineer to notice the signal of Brisbin to slow up immediately before the collision; (5) running the engine and the coal car on the side track when obstructed, instead of the main track; (6) failure of Bradley and Brisbin to keep a lookout for the standing cars and properly signal the engineer to stop before the collision; (7) the omission of the engineer and fireman to stop before the collision; and (8) employees moving the engine from the main track out onto the side track before being instructed what tracks to take in transferring the coal car.   These several grounds of negligence were submitted to the jury, and a verdict authorized in event any of them were proven in connection with a finding that deceased was free from contributory negligence. Appellant contends that several of the grounds stated were without support in the evidence, and in this is sustained by the record.

With reference to the second and eighth grounds: the evidence was undisputed that the yard master, in

directing that the coal car be moved to the transfer track, did not tell employees which track to take; but it was equally conclusive that this was no part of his duty, and that the route was for the determination of the crew. It was the duty of the yard master to direct where to take the cars, but that of the crew to determine the manner of executing the orders, so that the evidence did not warrant the submission to the jury of whether the yard master was negligent in omitting to instruct what route to take, nor Brisbin and the engineer in proceeding without such instructions.

3. SAME: submission of issues.

Another ground of negligence alleged in different forms was that the crew were negligent in taking the side track. No argument is required to vindicate the right of the employees to make use of such track as might be selected, at least unless an unsafe place to perform the work, and there is no claim but that the work might have been done on the side track in entire safety; but it was their duty to know where they were moving the engine and car, and the theory of the plaintiff is that, notwithstanding Brisbin's testimony to the contrary, they moved eastward through the switch on the side track in the mistaken supposition that they were on the main track. True they had backed the engine from the side track shortly before without stopping to close the switch, and might have observed which track they were taking, as the light at the switch stand was burning brightly. But scarcely had they passed this when Brisbin signaled the engineer that the track was clear the entire way to the transfer track; whereas, the cars had been left near the east end of the side track shortly before, and he knew that track was not clear.

4. SAME: negligence.

Moreover, the engineer, as he could see the head end of the coal car, must have known that no one was there keeping a lookout, and, as the steam and smoke obstructed his view part of the time, he must have proceeded with

the belief that the track was clear, though he knew cars were

on the side track. Again, it is not probable

5. SAME:
negligence:
evidence.

that they intended to take the cars back
to the transfer track when they had been
brought from there immediately before, and it is scarcely
possible that they proposed to pull them back from the
transfer track, after leaving the coal car on side track No. 3,
where the engine would stand with a train back of it to
the west, with loaded cars to the east of it. All the cir-
cumstances are consistent with the theory, that Brisbin
and the engineer had forgotten that the switch had been
left open when the engine was backed on the main track,
and that when it returned with the coal car they supposed
they were proceeding to the transfer along the main line.
In no other way can Brisbin's signal and the subsequent
operation of the engine be reasonably explained. Whether
they failed to observe that they were moving on the side
track, and therein were negligent, was rightly submitted
to the jury.

IV. Among other instructions given, the court told
the jury that "it was the duty of the said Joseph J. Yeager
to use ordinary and reasonable care in looking out for

6. SAME:
contributory
negligence:
instruction.

obstructions which might be in the way of
the moving car and engine, and to use ordi-
nary and reasonable care in placing himself
in a position where he could signal the engineer in the
event that he observed an obstruction, and no reliance
upon the care and watchfulness of his coemployees would
excuse him unless his reliance on the same, if he did so rely,
in your judgment, based upon the evidence, would not be
a want of ordinary care under the circumstances surround-
ing the same." Counsel assume that this required deceased
to look out for obstructions and place himself where he
could do so and signal to the engineer, but, though not
happily worded, it exacts no more than the exercise of
reasonable care therein. If he was where he should have

been and doing what he should have done, in the exercise of such care, no more was required by this instruction; but it is said that this permitted him to escape responsibility through reliance on the performance of his duty by another. It can not be questioned that one employee may rely upon the discharge of duty by another. *Bucklew v. Railway,* 64 Iowa, 603, *Nichols v. Railway,* 69 Iowa, 154. An instruction must be construed with reference to the evidence. No one could pretend that there was anything to indicate that deceased relied on Brisbin's being on the coal car, and the most that could have been intended by this instruction was that deceased might have relied on Brisbin giving signals from the footboard to the engineer, as it was impossible to do so from the side where he was riding. When so construed—and the jury could not well understand it otherwise—defendant had no cause for complaint.

V. In another instruction the jury was told that it was the duty of deceased, as field switchman, "to use reasonable and ordinary care to place himself in such a position as to enable him to properly perform his said work, including looking out ahead for obstructions and signaling the engineer, and if he failed to use ordinary and reasonable care in this respect he was guilty of negligence." Appellant argues that as, in the situation deceased had placed himself, he could not look ahead because of the coal car, the jury should have found for the defendant; but, according to the instruction, all exacted of him was that he exercise ordinary care in putting himself in a suitable situation to perform his work, and, as there was evidence tending to show that his proper place was on the footboard, it can not be said that the jury acted without evidence in saying he was where he should have been in the exercise of the degree of care required.

VI. Complaint is made of the court's refusal to give

the following instruction: "You are the sole judges of the credibility of the witnesses, what it proves, and what it

8. EVIDENCE: credibility of witness: instruction.

disproves. If there is a conflict in the testimony, it is your duty to reconcile it consistently with the truthfulness of all the witnesses if you can do so; but, if you are unable to do so, it is for you to determine whom you will believe and whom you will disbelieve." This is awkwardly worded and might well have been rejected as indicating that the matter of credibility alone may prove or disprove something; but, aside from this, it exacts too much as the duty of the jury. Of course, the testimony of a witness is not to be rejected arbitrarily: but it may be rejected when the witness has been impeached in any of the recognized methods or owing to the inherent improbability of his testimony and the manner and appearance of the witness while testifying, and when so rejected the jury is under no obligation to undertake to reconcile other testimony therewith in order to uphold the credibility of the impeached witness. Nevertheless, one of the commonest tests for ascertaining the truthfulness of testimony lies in the attempt to reconcile the several stories of the witnesses as consistent with each other; but the jury ought never to be required to succeed if this involves the construction of the evidence of credible witnesses contrary to what the jury believe to be the truth. The inquiry is not with respect to the truthfulness of the witnesses, but of their testimony as given, and this is to be reconciled only when practicable. The refusal of the instruction was not error, though to have given it might not have been prejudicial. See *Optical Co. v. Michelson*, 1 Neb. (Unof.) 137 (95 N. W. 463).

The judgment must be reversed because of the submission to the jury of the two grounds of negligence unsupported by the evidence. That this was reversible error has been held too often to require the citation of authority. Appellee suggests that, as defendant requested that some of

the other allegations of negligence be withdrawn from the
jury, this, in effect, amounted to an acquiesc-
9. NEGLIGENCE: ence in the submission of these. As no
submission
of issue. allusion thereto was made, and the requests
were confined strictly to other allegations, there is no
ground on which to base a finding that such requests·
inferentially conceded the sufficiency of the evidence to
support these. Moreover, ·appellant requested that all the
grounds of negligence alleged be withdrawn from the jury,
and that was broad enough to include any without evidence
to support them.—*Reversed.* .