Orton IVES, Plaintiff and Appellant,

v.

Willard HANSON and Esther Hanson,
Defendants and Respondents.

No. 7455.

Supreme Court of North Dakota.

Nov. 12, 1954.

Swendseid & Bekken, Stanley, for plaintiff and appellant.

H. Morris Borstad, Tioga, and E. C. Rudolph, Ray, for defendants and respondents.

JOHNSON, Judge.

This is an equitable action for the reformation of a warranty deed.

On November 29, 1946, the plaintiff, Orton Ives, made, executed, and delivered a warranty deed covering the East Half of the Southwest Quarter (E½SW¼) and Lots 6 and 7, Section 6, Township 157 North, Range 94 to Harold Hanson. In the deed his son, Willard Hanson, was named as grantee. There are no reservations in the deed.

The plaintiff pleads his right of reformation on an alleged oral agreement wherein and whereby he had agreed to sell to Harold Hanson the surface of the above described property and the undivided fifty per cent (50%) interest in all the minerals, oil and gas in and under and produced therefrom; that at the time of the execution and delivery of the warranty deed mentioned, the plaintiff and Harold Hanson were informed and believed that Mountrail County owned fifty per cent (50%) of the oil, gas and other minerals in and under said land; that by mutual mistake of both law and fact, the deed made, executed and delivered by the plaintiff contained no reservation whatsoever and erroneously conveyed said land in fee simple; and the plaintiff requests that the deed be reformed to convey the surface rights to the land covered by the warranty deed and that fifty per cent (50%) of the oil, gas and other minerals be reserved to him. Willard Hanson is a nephew and Esther Hanson, his mother, is a sister of the plaintiff. They answered denying that there was a mutual mistake on the part of the plaintiff and Harold Hanson with reference to reserving in the plaintiff certain oil and gas in the lands described in the plaintiff's complaint, and alleged that the deed of conveyance was intended to, and did express the actual intent of the parties; that nearly six years have elapsed since the execution and delivery of the deed, and that the plaintiff did not assert any mistake until the commencement of this action; that since the execution and delivery of the deed, Harold Hanson has died and that his testimony is no longer available; that by reason of the plaintiff's laches and negligence the defendants have been prejudiced because of the difficulty of securing certain and exact evidence as to conversations leading up to the deed.

This action was tried to the court and resulted in a decision in favor of the defendants. The plaintiff appealed and demanded a trial de novo.

The real object of this action is to determine whether or not the plaintiff, as grantor, or the defendant, Willard Hanson, as grantee, in the warranty deed mentioned, is the owner of fifty per cent (50%) of the minerals, including oil and gas, in the real property covered by the deed, which by the statute, Section 11–2704 of the NDRC 1943, was reserved to the county.

The only persons having actual knowledge of the alleged oral agreement were the plaintiff himself and Harold Hanson. It is upon the testimony of the plaintiff alone that the action to reform the deed is based.

It appears from the evidence that when the parties reached an agreement of sale and purchase of the land described in the

warranty deed to Willard Hanson, they decided to drive to the city of Stanley and consult attorney F. F. Wyckoff. The plaintiff testifies that the alleged oral agreement was explained to Attorney Wyckoff and that he informed the parties that under the provisions of Chapter 136 of the Session Laws of 1941, the county automatically retained fifty per cent (50%) of all the oil, gas and other minerals in tax title land acquired by the county. The plaintiff, Orton Ives, had purchased the land from Mountrail County under a contract for deed dated December 22, 1942. Mountrail County had acquired title to the property by tax deed executed and delivered to it on the 1st day of October, 1940. On February 17, 1945, Mountrail County executed and delivered a county deed from County to purchaser, Orton Ives, covering and describing the land involved in the transaction between the plaintiff and Harold Hanson. This deed contains no reservations whatsoever.

The plaintiff asserts that he had agreed to sell the surface and fifty per cent (50%) of the minerals, including oil and gas, to Harold Hanson; that inasmuch as the county owned fifty per cent (50%) of the minerals including oil and gas, if the plaintiff was to comply with the alleged oral agreement made to Harold Hanson, he could not retain any of the oil, gas or other minerals. It is stated that Attorney Wyckoff advised that any assertion of the reservation of the minerals in and to the plaintiff would merely serve to pass less than fifty per cent (50%) of the minerals, which would be contrary to the terms of the alleged oral agreement; that after some discussion between Orton Ives and Harold Hanson concerning the status of the minerals, the plaintiff agreed to abide by the oral contract that he made with Harold Hanson and that the warranty deed to Willard Hanson was drawn without any reservations.

Mr. Wyckoff died in October 1948. At the time of the trial of this action, the only party who could shed any light on the consummation of the alleged oral agreement was the plaintiff himself, as both Harold Hanson and F. F. Wyckoff, the attorney who drew the deed had died.

On March 21, 1951, this court decided the cases of Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132, and Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137. These cases, following the case of Adams County v. Smith and Dakota Collieries Company, 74 N.D. 621, 23 N.W.2d 873, determined that the counties of the state no longer had any interest in the fifty per cent (50%) of the minerals as provided by Chapter 136 of the 1941 Session Laws, now Section 11-2704 of the NDRC 1943; that this statute had been superseded by Chapter 286 of the 1941 Session Laws, now Section 57-2816 of the NDRC 1943, passed at the same session of the legislature as Chapter 136.

At the time that the plaintiff and Harold Hanson consulted Attorney Wyckoff, and upon the advice given, they were both laboring under the mistaken belief as to the law regarding the ownership of minerals by a county.

Shortly after the public announcement of these decisions and on or about June 1, 1951, the plaintiff contacted the defendant, Willard Hanson, and told him that fifty per cent (50%) of the minerals under the land covered by the warranty deed dated November 29, 1946, belonged to him and stated: "Well the boy made the statement that he knew about it. He knew it was so." This statement, however, is inconsistent and in conflict with the testimony of both Willard Hanson and his mother, Esther Hanson. They both stated that they knew nothing about the alleged agreement between the plaintiff and Harold Hanson; that the plaintiff had never mentioned this matter prior to June 1951 to either of the defendants. Esther Hanson also testified that her husband had never mentioned anything with reference to the reservation of oil and gas in the land deeded to Willard Hanson and that she had never heard of it until the plaintiff talked to her about it for the first time along about June 1951.

It is significant to note that although the plaintiff asserts positively the terms of the alleged oral agreement leading up to the execution and delivery of the warranty deed to Willard Hanson, at one point he testifies as follows:

"And the agreement was between Hanson, Harold Hanson, and I think I was supposed to have half of that mineral rights if the county couldn't claim them. And we went to Stanley with that understanding that I was supposed to have that if the county didn't reserve it. And we went to the State's Attorney. He said the county did hold that half of that. And that's, that is the way it was with the agreement, I understand, was the way it was supposed to be."

At another point in the testimony of the plaintiff he asserts, referring to Hanson:

"A. He said, 'I don't care about that.'

"Q. He didn't care about what? A. About the fifty per cent of the mineral rights. 'I don't care about that', he said."

This testimony of the plaintiff is in conflict with the alleged oral agreement that he was to convey fifty per cent (50%) of the minerals and the surface. It would be logical to suppose that if Harold Hanson did not care about the minerals as testified to by the plaintiff, that the plaintiff would then have insisted upon fifty per cent (50%) reservation thereof. This he did not do.

The deed involved in this action grants a fee-simple title without reservations. A fee-simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended. Section 47–1013, NDRC 1943. A grant shall be interpreted in favor of the grantee. Section 47–0913, NDRC 1943.

■ Parol evidence is inadmissible to vary or contradict the terms of a written contract as between the parties thereto un-less through fraud or mistake or accident the contract as written fails to express the real intention of the parties. Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606.

■ Parol evidence is admissible to establish the fact of fraud or of a mistake in actions to reform written instruments, and to show how the writing should be corrected in order to conform to the agreement of intention which the parties actually made or had. 45 Am.Jur. 650, Reformation of Instruments, Sec. 113. A presumption arises from the instrument itself that it fully and clearly sets forth the true agreement of the parties, and where the mistake is denied, the burden is on the party alleging it to prove that the written instrument does not fully or truly state the agreement that the parties intended to make. 45 Am.Jur. 649, Reformation of Instruments, Sec. 112.

In an action of this kind much stronger and clearer evidence is required than in an ordinary action for damages. The high remedy of reformation is never granted on a probability, or on a mere preponderance of the evidence. The requirements relate not only to the mistake and the mutuality thereof, but also to the real agreement which is alleged to have been made. 45 Am.Jur. 651, Reformation of Instruments, Sec. 116.

"While there are cases holding that, as in other civil cases, a mere preponderance of the evidence may be sufficient to warrant reformation of an instrument, it is generally held, except in special circumstances, that a mere preponderance of the evidence is insufficient, and that the courts should exercise great caution and require a high degree of proof, *especially when death has sealed the lips of the original parties or a party.*" 76 C.J.S., Reformation of Instruments, § 84a, pages 454 and 455. (Emphasis supplied.)

Many expressions are found in the opinions with reference to actions for reformation of an instrument to the effect that the evidence must be, "clear and convincing, evidence which is clear and satisfactory,

evidence which is the clearest and most satisfactory, evidence which is clear, precise, and indubitable, evidence which is clear, cogent, and convincing, evidence which is clear, convincing, and satisfactory, evidence which is clear, positive, and convincing, evidence which is clear, unequivocal, and convincing, evidence which is clear, unequivocal, and decisive, and similar expressions." 76 C.J.S., Reformation of Instruments, § 84, pages 455, 456, 457 and 458.

■ There is sufficient evidence to justify the reformation of an instrument by parol only when such evidence is clear, satisfactory, specific and convincing that there was a mutual mistake of fact. Forester v. Van Auken, 12 N.D. 175, 96 N.W. 301; Wilson v. Polsfut, 78 N.D. 204, 49 N.W.2d 102.

In the case at bar the trial court found, "that the evidence presented by the plaintiff in this action is not such clear, satisfactory, specific, and convincing evidence that there was a mutual mistake of fact as to justify reformation of said written instrument by parol evidence."

■ When we consider that the action for reformation is based solely upon the evidence presented by one of the parties to the alleged oral agreement resulting in the warranty deed to Willard Hanson; that no corroboration of the facts or circumstances is offered; that the plaintiff's evidence is in conflict with the terms of his warranty deed to Willard Hanson; that the evidence is in some respects not credible, particularly with reference to the testimony of the plaintiff that Harold Hanson was not interested in the mineral rights involved, and that the plaintiff did not mention the alleged agreement to either Willard Hanson or his mother, Esther Hanson, who were his relatives, a nephew and a sister, until June, 1951, after publicity had been given to the Kershaw and Kopplin cases, supra; and that Harold Hanson, during his lifetime, never mentioned the alleged agreement to his son, Willard, or to his wife, Esther, the trial court's findings of fact, based upon all

the circumstances and the evidence is fully justified.

In the case of Wheeler v. Boyer Fire Apparatus Co., 63 N.D. 403, at page 417, 248 N.W. 521, 526, which was an action involving the modification of a commission contract, this court quoted with approval from Pomeroy:

" 'The authorities all require that parol evidence of the mistake and the alleged modification must be most clear and convincing—in the language of some judges, "the strongest possible"— or else the mistake must be admitted by the opposite party. * * * Courts of equity do not grant the high remedy of reformation upon a probability, nor even *upon a mere preponderance of the evidence,* but only upon the certainty of the error.' " 2 Pom.Eq.Jur., 4th Ed., Sec. 859, pp. 1756, 1757. (Emphasis supplied.)

In the case of Moragne v. Moragne, 234 Ala. 660, 176 So. 455, 456, the court said:

"Courts should use great caution and require a high degree of proof in cases of reformation of written instruments. Johnson v. Sandlin, 209 Ala. 430, 96 So. 223. 'The proof must be clear, exact, and satisfactory that the writing does not express the intention, of the parties, and also as to what the parties did intend the writing should contain.' Lipham v. Shamblee, 205 Ala. 498, 88 So. 569. See, also, 17 Alabama Digest, Release, p. 45. *This rule is especially salutary in cases like this one where death has sealed the lips of the party against whom relief is sought."* (Emphasis supplied.)

"When many years have passed, and the parties to a transaction are dead, caution must be used in changing the deliberate language of their contracts." Tope v. Tope, 370 Ill. 187, 18 N.E.2d 229, at page 232. See also Stormon v. Weiss, N.D., 65 N.W.2d 475, at pages 518 and 519; Hills v. Hill, 58 S.D. 556, 237 N.W. 769.

"The court should weigh the testimony, taking into consideration all of the circumstances shown by the evidence. The fact that the persons most concerned and who could have testified of their own knowledge have nearly all died is a matter to be considered in weighing the evidence and determining the facts." 30 C.J.S., Equity, § 479a, page 874.

The trial court undoubtedly took into consideration in weighing the evidence in this case that one of the parties most concerned, Harold Hanson, was deceased, and that the attorney who prepared the deed and gave advice to the parties is also deceased.

The conclusion of the trial court that the deed as executed expressed the real intention of the parties when executed, was justified by the evidence. It cannot be said that the evidence is so clear, satisfactory, specific and convincing as to warrant the reformation of the deed executed by the plaintiff to Willard Hanson, as grantee, resulting from the negotiations between him and Harold Hanson.

It is argued and contended that the testimony of the plaintiff, Orton Ives, stands uncontradicted and unimpeached and, therefore, should be accepted by the court in determining the issues in this case. In support of that argument the appellant cites a note in 8 A.L.R. at page 796 and quotes at page 828 from the case of Hull v. Littauer, 1900, 162 N.Y. 569, 57 N.E. 102, in support of this contention.

A great many cases are cited in the note in 8 A.L.R. at page 801 and also at page 814 announcing the rule that the testimony of a witness, though uncontradicted, is for the triers of facts, whether court or jury, who are not bound thereby.

In the case of Crilly v. Morris, 70 S.D. 584, 19 N.W.2d 836, 840, it was said:

"The rule is well settled that where an unimpeached witness testifies distinctly and positively to a fact and is uncontradicted, but the statements of the witness are grossly improbable or he

has an interest in the question at issue, Courts are not bound to blindly adopt the statements of such witness.

" 'Blount v. Medbery, 16 S.D. 562, 94 N.W. 428; McGill v. Young, 16 S.D. 360, 92 N.W. 1066; Union Nat. Bank v. Mailloux, 27 S.D. 543, 132 N.W. 168; Hudson v. Sheafe, 41 S.D. 475, 171 N.W. 320; Jerke v. Delmont State Bank, 51 S.D. 623, 216 N.W. 362, on rehearing 54 S.D. 446, 223 N.W. 585, at page 594, 72 A.L.R. 7; Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501; Yeager v. Chicago, R. I. & P. R. Co., 148 Iowa 231, 123 N.W. 974; Logue v. Grand Trunk Ry. Co., 102 Me. 34, 65 A. 522; Anderson v. Liljengren, 50 Minn. 3, 52 N.W. 219; Elwood v. Western Union Tel. Co., 45 N.Y. 549, 6 Am.Rep. 140; Keene v. Behan, 40 Wash. 505, 82 P. 884; Gosline v. Dryfoos, 45 Wash. 396, 88 P. 634; Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Leavitt v. Thurston, 38 Utah 351, 113 P. 77; Sonoma County v. Stofen, 125 Cal. 32, 57 P. 681.' "

In an action against motion picture theatre owner for death of a projection machine operator in a fire caused by negligence of fellow employee, jury was not required to accept the testimony of owner and fellow employee as to probable origin of the fire, even if such testimony is uncontradicted. Hossack v. Metzger, 8 Cir., 156 F.2d 501.

"Evidence which is uncontradicted is not necessarily to be accepted as true." Kasper v. Baron, 8 Cir., 191 F.2d 737.

Furthermore, the Hull case cited by appellant does not support his contention, as it states, "and whether it should be accepted without question [referring to the evidence of a party] depends upon the situation as developed by the facts and circumstances and the attitude of his adversary." Hull v. Littauer, supra, at page 103 of 57 N.E. The weight of evidence is not a question of mathematics, but depends on the effect it has in inducing belief, under all of the facts and circumstances involved. The triers of facts may and should consider and weigh all the

evidence in the case, and cannot arbitrarily reject evidence, whether the witness is interested or disinterested, although they are not obliged to believe or disbelieve all, or any particular part of, the evidence presented. 32 C.J.S., Evidence, pages 1068, 1069, Weight of Evidence, § 1031.

Under all the circumstances and the evidence in this action, the fact that one of the persons most concerned, and the attorney who prepared the warranty deed, which is the subject hereof, had died, and who could have testified of their own knowledge as to the actual agreement involved, are matters to be considered in weighing the evidence.

When the evidence of Orton Ives, the plaintiff, who is seeking to show that the deed which he executed to Willard Hanson does not express the true intent of the parties, is weighed on the basis of these considerations, although uncontradicted, it was clearly within the province of the trial court to determine that it was not so clear, satisfactory and convincing as to warrant reformation.

The judgment of the trial court is affirmed.

MORRIS, C. J., and BURKE, SATHRE, and GRIMSON, JJ., concur.